| | | |
|---|---|---|
| AVON ALLEN | * | IN THE |
| 401 E. Eager Street | | |
| Baltimore, Maryland 21202 | * | UNITED STATES |
| | | |
| Plaintiff | * | DISTRICT COURT |
| v. | | |
| | * | FOR THE DISTRICT |
| OFFICER MARCUS TAYLOR | | |
| 5756 Hartford & Pointville Road | * | OF MARYLAND |
| Joint Base MDL, NJ 08640 | | |
| Individually and as a police officer for | * | Case No. |
| BALTIMORE CITY POLICE DEPT. | | |
| | * | |
| AND | | |
| | * | |
| OFFICER EVODIO HENDRIX | | |
| 42 Patton Road | * | |
| Ayer, MA 01432 | | |
| Individually and as a police officer for | * | |
| BALTIMORE CITY POLICE DEPT. | | |
| | * | |
| AND | | |
| | * | |
| OFFICER MAURICE WARD | | |
| 4004 East Arkona Road | * | |
| Milan, MI 48160 | | |
| Individually and as a police officer for | * | |
| BALTIMORE CITY POLICE DEPT. | | |
| | * | |
| AND | | |
| | * | |
| SERGEANT WAYNE JENKINS | | |
| 501 Gary Hill Road | * | |
| Edgefield, SC 29824 | | |
| Individually and as a police officer for | * | |
| BALTIMORE CITY POLICE DEPT. | | |
| | * | |
| AND | | |
| | * | |
| BALTIMORE CITY POLICE DEPT. | | |
| S/O: Michael Harrison, Police Commissioner | * | |
| 601 E. Fayette Street | | |
| Baltimore, Maryland 21202 | * | |
| | | |
| AND | * | |

SERGEANT THOMAS ALLERS          *
846 NE 54th Terrace
Sumterville, FL 33521           *
Individually and as a police officer for
BALTIMORE CITY POLICE DEPT.     *

AND                             *

MAJOR IAN DOMBROSKI             *
601 E. Fayette Street
Baltimore, Maryland 21202       *
Individually and as a police officer for
BALTIMORE CITY POLICE DEPT.     *

AND                             *

DEP. POLICE COMM. DEAN PALMERE  *
601 E. Fayette Street
Baltimore, Maryland 21202       *
Individually and Dep. Police Commissioner for
BALTIMORE CITY POLICE DEPT.     *

Defendants.                     *
*    *    *    *    *    *    *    *    *    *    *    *    *

## COMPLAINT AND JURY TRIAL DEMAND

**COMES NOW** Plaintiff Avon Allen (hereinafter "Mr. Allen," "Plaintiff," and "Plaintiff Allen"), by and through his attorneys Joshua L. Insley, Esquire, Hannah M. Ernstberger, Esquire, and the law office of Saller, Lord, Ernstberger & Insley, and complaining of the acts of the Defendants alleges and states as follows:

## INTRODUCTION

In this action, Plaintiff Allen seeks compensatory and punitive damages as well as other relief pursuant to 42 U.S.C. § 1983, 42 U.S.C. §1985, 42 U.S.C. §1988, the Fourth, and Fourteenth Amendments to the United States Constitution, Article 24 of the Maryland Constitution, and Maryland Law, for the unconstitutional and unlawful conduct of the Defendants. The actions of the Defendants as detailed herein deprived Plaintiff Allen of his civil rights and constitute egregious, excessive and objectively unreasonable violation of numerous

rights under the Fourth and Fourteenth Amendments to the United States Constitution, Article 24 of the Maryland Constitution and Maryland law. Numerous Defendants participated in Plaintiff Allen being stopped, beaten and arrested for allegedly possessing a firearm, evidence that was actually fabricated by Defendant Officers in an attempt to justify their illegal actions. The remaining Defendants were aware of the custom of violating citizens' civil rights and condoned, or otherwise failed to adequately train and supervise, such actions. In this instance of carrying out the custom, Plaintiff Allen had his civil rights violated when he was illegally stopped, searched, arrested and prosecuted for crimes which he did not commit, but instead were fabricated by the Defendant Officers.

**PARTIES**

1.      Plaintiff, Avon Allen, is a 35-year-old, African American citizen of the United States and resident of Baltimore City, Maryland.

2.      Defendant Officer Marcus Taylor (hereinafter "Officer Taylor," "Defendant Taylor," or collectively with other named officers as "Defendant Officers") was, at all times relevant hereto, employed by Defendant Baltimore City Police Department as an officer of the Gun Trace Task Force and acting in the course and scope of his official duties as a Baltimore City Police Officer. Defendant Taylor was on duty and participated in the stop and apprehension of Plaintiff Allen. Defendant Taylor is sued in his individual and official capacity under 42 U.S.C. § 1983, 42 U.S.C. §1985, 42 U.S.C. § 1988, the Fourth, and Fourteenth Amendments to the United States Constitution, Article 24 of the Maryland Constitution, and Maryland Law.

3.      Defendant Officer Evodio Hendrix (hereinafter "Officer Hendrix," "Defendant Hendrix," or collectively with other named officers as "Defendant Officers") was, at all times relevant hereto, employed by Defendant Baltimore City Police Department as an officer of the Gun Trace Task Force and acting in the course and scope of his official duties as a Baltimore City Police Officer.

Defendant Hendrix was on duty and participated in the stop and apprehension of Plaintiff Allen. Defendant Hendrix is sued in his individual and official capacity under 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1988, the Fourth and Fourteenth Amendments to the United States Constitution, Article 24 of the Maryland Constitution, and Maryland Law.

4.    Defendant Officer Maurice K. Ward Jr. (hereinafter "Officer Ward," "Defendant Ward," or collectively with other named officers as "Defendant Officers") was, at all times relevant hereto, employed by Defendant Baltimore City Police Department as an officer of the Gun Trace Task Force and acting in the course and scope of his official duties as a Baltimore City Police Officer. Defendant Ward was on duty and participated in the stop and apprehension of Plaintiff Allen. Defendant Ward is sued in his individual and official capacity under 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1988, the Fourth and Fourteenth Amendments to the United States Constitution, Article 24 of the Maryland Constitution, and Maryland Law.

5.    Defendant Sergeant Jenkins (hereinafter "Sgt. Jenkins," "Defendant Jenkins," or collectively with other named officers as "Defendant Officers") was, at all times relevant hereto, employed by Defendant Baltimore Police Department as an officer of the Gun Trace Task Force and acting in the course and scope of his official duties as a Baltimore City Police Officer. Defendant Jenkins was on duty and participated in the stop and apprehension of Plaintiff Allen. Defendant Jenkins is sued in his individual and official capacity under 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1988, the Fourth and Fourteenth Amendments to the United States Constitution, Article 24 of the Maryland Constitution, and Maryland Law.

6.    Defendant Baltimore City Police Department (hereinafter "BPD") is an agency of the State of Maryland. The BPD is responsible for providing police and law enforcement services for the City of Baltimore and for investigating crimes that occur within the City. The BPD has its principal offices at 242 West 29th Street, Baltimore, Maryland 21211-2908. Upon information and belief, the

BPD reposed decision-making authority regarding police officer training and supervision. The BPD is a local agency for the purposes of the Local Government Tort Claims Act.

7.    Though it has long been noted by the courts that Defendant BPD is customarily a state agency rather than an agency of a county or municipality, and therefore enjoys the protection of sovereign immunity, this Court has determined that Defendant BPD is a suable entity under 42 U.S.C. § 1983. *Hector v. Weglein*, 558 F. Supp. 194, 197-99 (D. Md. 1982), s*ee also Chin v. City of Baltimore*, 241 F. Supp. 2d 546, 547-48 (D. Md. 2003). The Court ruled Defendant BPD is "so connected with the government of Baltimore City to such an extent as to prevent the Police Department from asserting an Eleventh Amendment immunity." *Chin* at 548.

8.    Regarding Plaintiff's state claims, Defendant BPD is sued pursuant to 42 U.S. § 1983, § 1985, and § 1988, as individual Defendants were acting under color of state law and subjected Plaintiff to deprivation of his civil rights under the United States Constitution.

9.    Prior to January 13, 2016, Defendant BPD had actual or constructive knowledge that Defendants Hendrix, Ward, Jenkins, Taylor, and other police officers of Defendant BPD were engaged in conduct that posed pervasive and unreasonable risk of constitutional injury to residents and citizens within the jurisdiction of the City of Baltimore but failed to take appropriate and adequate remedial action against these police officers to prevent the injuries suffered by the Plaintiff. Defendant BPD implemented a policy and custom of condonation or deliberate indifference toward civil rights violations by its officers, had a custom or policy of failing to train its officers adequately, and failed to adequately supervise Defendant Hendrix, Ward, Jenkins, and Taylor.

10.    Defendant BPD's directives and failure to take remedial actions against the pervasive and unreasonable misconducts of these police officers was a proximate cause of Plaintiff's injuries.

11.    Defendant Sergeant Thomas Allers (hereinafter "Sgt. Allers" and "Defendant Allers") is an adult male and, at all times relevant hereto, was employed by Defendant BPD as the supervisor

of the Gun Trace Task Force. Defendant Allers is sued in his individual and official capacity under 42 U.S. § 1983, § 1985, and § 1988.

12.     Defendant Allers, through his personal and official capacity as a supervisor officer employed by Defendant BPD, implemented a policy or custom of condonation or deliberate indifference to the use of excessive force by Defendant BPD officers and had a custom or policy of failing to train Defendant BPD officers adequately.

13.     Defendant Allers, in his personal and official capacity, failed to adequately supervise Defendants Hendrix, Ward, Jenkins, Taylor, and other police officers of Defendant BPD.

14.     Defendant Allers, in his personal and official capacity, participated in the actions of Defendant Officers' criminal enterprise including, but not limited to, illegally seizing money from citizens

15.     Defendant Allers' supervisory acts and failures to act are attributable as Defendant BPD's direct acts and failures to act. Because Defendant Allers was the Gun Trace Task Force supervisor on January 13, 2016, his acts or failures to act reflected official policy and practice for Defendant BPD or the failure to correctly implement the same.

16.     Defendant Major Ian Dombroski (hereinafter "Major Dombroski" and "Defendant Dombroski") is an adult male and, at all times relevant hereto, was employed by Defendant BPD as a Major in Defendant BPD's Internal Affairs Division. Defendant Dombroski is sued in his individual and professional capacity under 42 U.S. § 1983, § 1985, and § 1988.

17.     Defendant Dombroski, through his official capacity as a Major in Defendant BPD's Internal Affairs Division, implemented a policy or custom of condonation or deliberate indifference to the use of excessive force by Defendant BPD officers and had a custom or policy of failing to investigate and discipline Defendant BPD officers adequately.

18.     Defendant Dombroski, in his personal and official capacity, failed to adequately investigate and discipline Defendants Hendrix, Ward, Jenkins, Taylor, and other police officers of Defendant BPD.

19.     Defendant Dombroski's supervisory acts and failures to act are attributable as Defendant BPD's direct acts and failures to act. Because Defendant Dombroski was a Major in Defendant BPD's Internal Affairs Division on January 13, 2016, his acts or failures to act reflected official policy and practice for Defendant BPD or the failure to correctly implement the same.

20.     Defendant Police Deputy Commissioner Dean Palmere (hereinafter "Commissioner Palmere" and "Defendant Palmere") is an adult male and, at all times relevant hereto, was employed by Defendant BPD as Deputy Police Commissioner. Defendant Palmere is sued in his individual and official capacity under 42 U.S. § 1983, § 1985, and § 1988.

21.     Defendant Palmere, through his official capacity as Deputy Police Commissioner of Defendant BPD, implemented a policy or custom of condonation or deliberate indifference toward civil rights violations by Defendant BPD officers and had a custom or policy of failing to train Defendant BPD officers adequately.

22.     Defendant Palmere actively coached the officers of Defendant BPD's Gun Trace Task Force as to what to testify to in court when confronted with allegations of illegal activity in order to further shield the actions from discovery.

23.     Defendant Palmere, in his personal and official capacity, failed to adequately supervise Defendants Hendrix, Ward, Jenkins, Taylor, and other police officers of Defendant BPD.

24.     Defendant Palmere's supervisory acts and failures to act were the direct acts are attributable as Defendant BPD's direct acts and failures to act. Because Defendant Palmere was the Deputy Police Commissioner on January 13, 2016, his acts or failures to act reflected official policy and practice for Defendant BPD or the failure to correctly implement the same.

25. At all times the actions and practices of the Defendants named herein and those acting at their direction, were performed under the color of state law and constitute state action within the meaning of the Fourteenth Amendment to the United States Constitution.

## JURISDICTION AND VENUE

26. The above and all other allegations herein are incorporated by reference as if fully set forth.

27. This case presents an actual case and controversy arising under the Fourth and Fourteenth Amendments to the United States Constitution and asserts claims for relief 42 U.S. § 1983, § 1985, and § 1988, as well as claims for relief under Article 24 of the Maryland Constitution, and Maryland State Law.

28. Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and § 1343. This Court also has supplemental jurisdiction over the state law claims against the individual Defendants pursuant to 28 U.S.C. § 1367.

29. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (b) inasmuch as Plaintiff's causes of action arose in the District of Maryland, and at all times relevant to this action all the Defendants were found in this District.

## FACTUAL ALLEGATIONS

30. The above and all other allegations herein are incorporated by reference as if fully set forth.

31. At all times relevant, Defendants Hendrix, Ward, Jenkins, and Taylor were members of the Defendant BPD's Gun Trace Task Force.

32. At all times relevant, Defendant Allers was the supervisory Sergeant of Defendant BPD's Gun Trace Task Force.

33.     At all times relevant, Defendant Dombroski was employed by Defendant BPD as a Major in the Baltimore City Police Internal Affairs Division.

34.     At all times relevant, Defendant Palmer was employed by Defendant BPD as Deputy Police Commissioner.

35.     At all times during the course of these events, Defendant BPD had advance notice that members of Gun Trace Task Force engaged in illegal acts while in the course of their employment. This notice included, but was not limited to, the Gun Trace Task Force plant evidence, stealing of money from citizens, and using excessive force.

36.     Defendant BPD has failed to adequately train and supervise Defendant BPD's officers in proper arrest, search and seizure, use of police powers, and use of force.

37.     Each of these factual allegations are supported by the incidents detailed below and the complaint set forth herein.

**Gary Brown Incident**

38.     On June 8, 2009, at the intersection of West Lafayette Street and North Eutaw Street in Baltimore, Maryland, Officers Jamel Rayam and Jason Giordano of Defendant BPD were on patrol in plain clothes as part of the Northern District Drug Unit.

39.     The two officers see another officer they believed to be Office Michael Sylvester engaged in a traffic stop in plain clothes.  Officers Rayam and Giordano verify Officer Sylvester's identity and assist in the stop.

40.     The driver, Mr. Gary Brown, and his passenger were removed and handcuffed.

41.     In the course of the stop, over $11,000 in cash was stolen from the vehicle. The money was traced to the legitimate refinance of a house with a "cash out" of equity.

42. On June 11, 2009, Gary Brown made a formal complaint for the theft. Mr. Brown detailed that all three officers discussed the money with him and threatened him with unlawful police actions, i.e. executing fraudulent search warrants on his house.

43. On August 27, 2009, complainant Gary Brown took and passed a polygraph examination regarding his interaction with the officers on June 8, 2009, including the stolen money.

44. On that same day Officer Sylvester cashed a "negotiable instrument" at M&T Bank in the amount of $10,842.00. The same day he deposited $6,000.00, all in $100 bills, into an account at Destinations Federal Credit Union.

45. On September 8, 2009, a copy of the case file was given to Assistant State's Attorney Doug Ludwig of Baltimore City State's Attorney's Office's Police Integrity Unit. Included were the polygraph results.

46. Despite the fact that the investigation by Defendant BPD was still ongoing and the officers were not yet cleared of any wrongdoing, on June 14, 2010, Baltimore City State's Attorney's Office's Doug Ludwig sent a letter to Internal Affairs stating Baltimore City State's Attorney's Office would not be pursuing charges against the officers involved in the theft.

47. On July 14, 2010, Officers Rayam and Giordano were ordered to take a polygraph test. The test showed a greater than 99% chance that they were being deceptive about the on-duty armed robbery of Mr. Gary Brown. (Exhibit 1).

48. Despite the polygraph failures, Officers Rayam and Giordano were permitted to continue policing the streets of Baltimore.

**Gary Clayton Case**

49.    On May 4, 2015, Baltimore City State's Attorney's Office filed an indictment in case number 115124016 against Gary Clayton.  The case was brought by the Gun Trace Task Force.

50.    On November 12, 2015, Mr. Clayton's counsel. Ms. Staci L. Pipkin, filed a Motion for Franks Hearing, challenging the veracity of the affidavit in support of a search warrant that was applied for, and subsequently issued to the Gun Trace Task Force. (Exhibit 2)

51.    The attached affidavit in support of the Motion for Franks Hearing alleged that Officer Jenkins needlessly pulled his gun and put it in Kimberly Demory's face when she asked Officer Jenkins for credentials and subsequently denied her the asthma inhaler when she began having an attack from the stress of the encounter.  In addition, Ms. Demory contended that one of the members was wearing an ATF shirt, impersonating a Federal Agent.

52.    The Franks Hearing occurred on November 12, 2015, in front of the Honorable Barry G. Williams. The Office of the State's Attorney for Baltimore City was represented by Assistant State's Attorney Kent Grasso.  Judge Williams found Officer Jemel Rayam's testimony to be not credible in relation to numerous factual allegations he made. Judge Williams granted Ms. Pipkin's Motion and the warrant was deemed invalid based on numerous factual misrepresentations by Gun Trace Task Force member Officer Jemel Rayam.

53.    Baltimore City State's Attorney's Office entered Nolle Prosequi to the indictment on the same day.

54.    On January 12, 2016, Baltimore City State's Attorney's Office's Kent Grasso sent a memo to Stacy Ann Lewellyn, Chief of the Police Integrity Unit of Baltimore City State's Attorney's Office, Cynthia Banks, and MiaBeth Marosy detailing the troubling events of the Franks Hearing. (Exhibit 3)

55.     On January 21, 2016, StacyAnn Llewellyn sent a "Memo of Referral" to Defendant Dombrowski, the Head of Defendant BPD Internal Affairs Division outlining the concerns the Office had with Gun Trace Task Force member Rayam. (Exhibit 4) The memo states that Baltimore City State's Attorney's Office would be making disclosures to defendants and their counsel about Gun Trace Task Force Member Jemel Rayam in cases "where Jemel Rayam is an essential witness."

56.     Despite the concerns raised by the Baltimore City State's Attorney's Office, Officer Jenkins was permitted to continue policing the streets of Baltimore.

### Rakeem Douglas Case

57.     On November 7, 2016, Baltimore City State's Attorney's Office brought Rakeem Douglas to trial in case number 816281001. The case originated in District Court under Case number 0B02334234. All police involved were members of the Baltimore Police Department, including Jemel Rayam, Defendant Ward, and Defendant Jenkins. Baltimore City State's Attorney's Office dropped Jemel Rayam from their witness list when the case was sent from District Court to Circuit Court for a jury trial.

58.     Rakeem Douglas was represented by long term member of the Baltimore City defense bar, Mr. Lawrence Rosenberg.  Mr. Rosenberg remembered the 2009 disclosure that previous State's Attorney's Administrations had disclosed.  When he asked for it in his matter with Mr. Douglas, he was informed that the State did not deem Jemel Rayam as an "essential witness" so they would not be calling him, thus the disclosure was immaterial.

59.     Despite this glaring omission made by the Baltimore City State's Attorney's Office, which would have been made known to Baltimore Police Department, Defendant BPD took no corrective actions.

**Kendall English Case**

60.     On July 24, 2015, Kendell English was charged in the District Court under case number 6B02303755 for illegal firearms possession and related counts.  He was indicted on August 20, 2015, under case number 115230019.

61.     On September 26, 2016, Mr. English, by and through counsel, Karyn Merriweather, filed a Motion to Disclose the Confidential Informant cited by the Gun Trace Task Force, including Defendant Allers, in their Application for a Search and Seizure warrant in the case. (Exhibit 5)

62.     On October 18, 2016, Baltimore City State's Attorney's Office filed an objection to defense's motion to disclose the CI that Jemel Rayam and the Gun Trace Task Force alleged gave them information used as the basis of the warrant. (Exhibit 6)

63.     On December 9, 2016, Judge Lawrence P. Fletcher-Hill denied the defense motion. (Exhibit 7)

64.     On September 26, 2016, Defense counsel Karyn Merriweather filed a motion to compel discovery in the form of a request that the Internal Affairs Division file of Gun Trace Task Force Member Jemel Rayam be disclosed. Despite this being eight months after ASA StaciAnn Llewellyn's memo to Defendant Dombrowski, Baltimore City State's Attorney's Office not only had not been giving the disclosure to defendants, they were actively fighting them in court.

65.     At the hearing Defense Counsel proffered to the court that another lawyer had received a disclosure about Jemel Rayam that had bearing on his credibility. Due to the non-disclosure agreements defense attorneys are required to sign before they view police personnel records, the attorney could not provide specifics.

66.    Nevertheless, Ms. Merriweather persisted by offering the entire transcript of Jemel Rayam's testimony in the Franks Hearing from Gary Clayton's case.

67.    Baltimore City State's Attorney's Office objected to the disclosure.

68.    The Honorable Jeannie Hong of the Circuit Court for Baltimore City ruled in the State's favor. Stating specifically in her order, "There is no indication that Defendant BPD conducted an Internal Affairs of Officer Rayam concerning his testimony in the case." Once again this was eight months after ASA StaciAnn Llewellyn sent her memo to Defendant Dombrowski of the Internal Affairs Division. (Exhibit 4)

69.    Again, Ms. Merriweather persisted and she filed a Motion for a Franks Hearing challenging the veracity of the Gun Trace Task Force, specifically Jemell Rayam, in the affidavit in support of the search warrant used in the case.

70.    Baltimore City State's Attorney's Office objected to the disclosure.

71.    One of the allegations in the subsequent indictment of the Gun Trace Task Force in the United States District Court is that they routinely falsified affidavits for search warrants.

## United States Department of Justice Investigation into Baltimore City Police Department

72.    On or about August 10, 2016, the United States Department of Justice announced in a 163 page report the outcome of the Department's investigation of Defendant BPD. (Exhibit 8)

73.    The Department of Justice concluded that "there is reasonable cause to believe that BPD engages in a pattern or practice of conduct that violates the Constitution or federal law. BPD engages in a pattern or practice of:

a.    Making unconstitutional stops, searches, and arrest;

b. Using enforcement strategies that produce severe and unjustified disparities in the rates of stops, searches and arrests of African Americans'

c. Using excessive force; and

d. Retaliating against people engaging in constitutionally-protected expression." (Exhibit 8, pg. 3)

74. In regard to discrimination against African Americans, the report specifically found that "racial disparities in BPD's arrests are most pronounced for highly discretionary offenses: African Americans accounted for 91 percent of the 1,800 people charged solely with "failure to obey" or "trespassing"; 89 percent of the 1,350 charges for making a false statement to an officer; and 84 percent of the 6,500 people arrested for "disorderly conduct."" (Exhibit 8, pg. 7)

75. In regard to BPD's training of its officers, the report specifically found that "BPD's inadequate policies and training contribute to the Department's pattern or practice of constitutional violations." (Exhibit 8, pg. 129).

76. Additionally, in regard BPD's supervision of its officers, the report states "Serious deficiencies in BPD's supervision of its enforcement activities, including through data collection and analysis, contribute to the Department's failure to identify and correct unconstitutional policing." (Exhibit 7, pg. 134). Specifically, "[r]elated to BPD's failure to supervise its officers and collect data on their activities, the Department lacks an adequate early intervention system, or EIS, to identify officers based on patterns in their enforcement activities, complaints, and other criteria." (Exhibit 8, pg. 135).

77. Finally, the report made a number of findings regarding BPD's failure to hold officers accountable for misconduct, noting "BPD relies on deficient accountability systems that fail to curb unconstitutional policing." (Exhibit 8, pg. 139).

78.    Specifically, the report noted that Defendant BPD "fails to engage in effective community policing," instead it is "overly focused on narcotics enforcement, gun recovery, and 'clearing corners.'" (Exhibit 8, pg. 156)

### Federal Criminal Proceedings Against the Gun Trace Task Force

79.    In March 2017, the United States' Attorney's Office located in Baltimore, Maryland announced its indictment of seven of Defendant BPD's Gun Trace Task Force officers, including Defendant Taylor, Defendant Hendrix, Defendant Ward, and Defendant Jenkins.

80.    Subsequently, a number of the officers pleaded guilty and others were found guilty at trial in front of this Court.

81.    On or about July 21, 2017, Defendant Hendrix and Defendant Ward pleaded guilty to racketeering conspiracy. Both officers were subsequently sentenced to seven years in prison each.

82.    On or about August 30, 2017, Defendant Allers was arrested on racketeering charges.

83.    On or about December 6, 2017, Defendant Allers pleaded guilty to racketeering conspiracy. Defendant Allers was subsequently sentenced to 15 years in prison.

84.    On or about January 5, 2018, Defendant Jenkins pleaded guilty to racketeering conspiracy, racketeering, robbery, destruction, alteration, of falsification of records in a federal investigation, and deprivation of rights under color of law. Defendant Jenkins was subsequently sentenced to 25 years in prison.

85.    On or about February 12, 2018, Marcus Taylor and Daniel Hersl were found guilty on two counts of racketeering conspiracy, racketeering aiding and abetting, racketeering and robbery. Officer Taylor and Daniel Hersl were each subsequently sentenced to 18 years in prison.

86.    Prior to the March 2017 indictments, Plaintiff, along with the general public, was not aware of the pattern and practice of systemic rights violations being committed by the indicted officers, or their concealment thereof. Plaintiff was also unaware of Defendant BPD's concealment of such actions and Defendant BPD's continued failure to train, supervise, and discipline.

## PLAINTIFF'S CASE

87.    On or about 11:55 p.m. of January 13, 2016, Plaintiff was conversing with three friends in the 2200 block of Fulton Avenue in Baltimore City when he was arrested by Defendants Jenkins, Taylor, Hendrix and Ward for an alleged handgun violation.

88.    Defendant Officers were wearing tactical vests while operating an unmarked police car in the area.

89.    Officer Defendants claimed that Mr. Allen was displaying the characteristics of an armed person because his hand was hanging too close to his waist.

90.    Sergeant Jenkins, the driver, pulled the vehicle onto the curb, and officers exited the vehicle. They claim that the Plaintiff ran from them.

91.    Officer Defendants claimed to have chased the defendant around the block back to the 2200 block of Fulton Avenue. Defendants claim that as Mr. Allen ran, he slipped and fell and they saw a gun where he fell. Defendants claim that Mr. Allen was then able to stand up, pick up the gun, and start running again, all while the Officer Defendants were chasing him at full-speed.

92.    Officer Defendants claim that as Defendant Taylor tackled Mr. Allen, and while Mr. Allen was falling forward, Mr. Allen was able to reach out and throw the gun into sewer drain.  This would enable the Defendants to justify the lack of DNA or fingerprints connecting Mr. Allen to the firearm.

93.     Upon apprehension Mr. Allen was beaten by all four Defendant Officers as they claim he "resisted arrest".

94.     Mr. Allen was charged in case number 6B02317174, with Firearm Possession and related charges. Mr. Allen was ordered held without bail pending trial. He was subsequently indicted on case number 116040015 and continued to be held without bail.

95.     Trial commenced on May 19, 2016, in front of the Honorable Melissa Phinn of the Circuit Court for Baltimore City.  After two days of trial and despite testimony by the Defendants that they saw Mr. Allen in clear possession of the gun, some jurors did not believe the Defendants' story and they could not reach a verdict.

96.     A mistrial was declared and the matter was sent back to Reception Court for May 24, 2016. At that time, Baltimore City State's Attorney's Office entered a Nolle Prosequi to the indictment.  Mr. Allen was informed that the United States' Attorney for the State of Maryland had indicted Mr. Allen in the United States District Court for the offense under case number JFM 16-0169.

97.     Mr. Allen continued to be detained.

98.     On December 2, 2016, Assistant United States Attorney Clinton J. Fuchs filed an Order For Dismissal of the indictment, without explanation that his office was already planning to indict the Defendants.

99.     Mr. Allen was subsequently released from commitment on December 2, 2016, after being detained since January 13, 2016.

100.    On January 24, 2017, the State's Attorney's Office for Baltimore City filed an indictment of Mr. Allen in case number 117024026, again on the same incident that the United States' Attorney had dismissed.  The State's Attorney's Office for Baltimore City requested that

the Honorable Timothy J. Doory sign a Warrant Capias for Mr. Allen and the case was designated "TBA RESTRICTED".

101.    Mr. Allen was arrested on February 3, 2017, the TBA restriction was lifted on February 6, 2017.

102.    On February 6, 2017, Mr. Allen was brought before the Honorable Charles J. Peters for an arraignment and bail review. Given the history of the case, Judge Peters allowed Mr. Allen to be released pending trial.

103.    On March 1, 2017, all of the members of the Baltimore City Police Department involved with this case were indicted in the United States District Court of Maryland for been a rogue criminal enterprise that routinely stole, planted evidence and committed violent felonies in furtherance of their criminal enterprise.

104.    Mr. Allen's case was dismissed on March 15, 2017.

## COUNT I
**(Use of Excessive Force in the Seizure of Plaintiff in violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985 – Officer Taylor, in his official and personal capacity)**

105.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

106.    At all times relevant to this Complaint, Defendant Taylor was acting under the color of state law as an Officer employed by Defendant BPD.

107.    Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Taylor was prohibited from using excessive force in his efforts to seize, detain, and/or search Plaintiff Allen.

108.    The actions of Defendant Taylor as detailed herein constitute excessive and unlawful force in gross violation of Plaintiff's rights under the Fourth and Fourteenth

Amendments of the United States Constitution and the guarantees set forth in 42 U.S.C. § 1983, 1985, and 1988.

109.    Defendant Taylor's actions, made along with the other Defendant Officers, include, but are not limited to assaulting Plaintiff while he was under arrest.

110.    The force used by Defendant Taylor was intentional, excessive, unreasonable, absent any lawful justification or excuse, unconstitutional, and unlawful force in the restraint and/or apprehension of Plaintiff Allen.

111.    As a direct and proximate result of Defendant Taylor's unlawful and unconstitutional conduct as described herein, Plaintiff has been damaged, and continues to be damaged.

112.    Defendant Taylor's actions as described herein, and his use of force were intentional, wanton, willful, malicious, manifested blatant and reckless disregard for Plaintiff's constitutionally protected rights, and as such Plaintiff is entitled to punitive damages from Defendant Taylor individually.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT II
**(Alternative Use of Excessive Force in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985 – Officer Taylor, in his official and personal capacity)**

113.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

114.    This claim is made alternative to Count I.

115.    At all times relevant to this Complaint, Defendant Taylor was acting under the color of state law as an Officer employed by Defendant BPD.

116.    Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Taylor was prohibited from intentionally inflicting unnecessary and wanton pain and suffering against Plaintiff.

117.    The actions of Defendant Taylor as detailed herein constitute excessive and unlawful force in gross violation of Plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution and the guarantees set forth in 42 U.S.C. § 1983, 1985, and 1988.

118.    Upon information and belief, Defendant Taylor participated in the illegal stop and detention of Plaintiff Allen, during which the officers used excessive and unlawful force against the Plaintiff causing Plaintiff to suffer physical harm.

119.    Upon information and belief, Defendant Taylor willfully and wantonly inflicted unnecessary pain and suffering upon Plaintiff.

120.    The force used by Defendant Taylor was excessive, unreasonable, absent any legal justification or excuse, and unconstitutional.

121.    As a direct and proximate result of Defendant Taylor's unlawful and unconstitutional conduct as described herein.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT III
**(Illegal Arrest in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985– Officer Taylor, in his official and personal capacity)**

122.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

123.    At all times relevant to this Complaint, Defendant Taylor was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

124.    The Plaintiff, without being violent, was unlawfully detained and wrongfully arrested and searched by Defendants. Defendant Taylor did not have a warrant or probable cause to believe that the Plaintiff was involved in any criminal activity.

125.    The act of detaining Plaintiff without probable cause or a warrant amounts to illegal arrest.

126.    There was no factual basis for the allegation that Plaintiff was armed with a firearm. Nevertheless, Defendant Officers arrested Mr. Allen for illegal possession of a firearm after Defendant Officers planted one at the scene.

127.    The firearm was planted in an attempt to legitimize Defendant's illegal search and seizure of Plaintiff.

128.    The acts committed by Defendant Officers were done maliciously, willfully and wantonly, intentionally, and with reasonable certainty that the acts were in violation of Plaintiff's constitutional rights and would cause harm to Plaintiff.

129.    As a result of the Defendant's conduct and actions, Mr. Allen remained incarcerated for nearly a year and suffered, and will continue to suffer, severe mental anguish and other related expenses.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION

DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT IV
**(False Imprisonment in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985– Officer Taylor, in his official and personal capacity)**

130.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

131.    At all times relevant to this Complaint, Defendant Taylor was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

132.    By detaining Plaintiff and denying the Plaintiff s liberty, knowingly without legal justification, the police officers acted with ill will.  There was no proper motivation or legal justification to warrant the arrest in the first place nor the subsequent false imprisonment.

133.    The Plaintiff was detained while his person and surrounding area were searched and was subsequently placed under arrest and taken into custody after a firearm was planted at the scene.

134.    Such action caused Mr. Allen to be unlawfully deprived of his liberty.

135.    Defendant Taylor participated in detaining and arresting Plaintiff Allen.

136.    As a result of the actions of Defendant Taylor, Plaintiff suffered damage by being held against his will for an extended period of time without consent or legal justification.

137.    At all times the Defendant acted with ill will, without legal justification and improper motivation, to wit, covering up an illegal search, seizure, and arrest of an innocent citizen.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION

DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT V
### (Malicious Prosecution in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. §1983, 1985 – Officer Taylor, in his official and personal capacity)

138.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

139.    At all times relevant to this Complaint, Defendant Jenkins was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

140.    Defendant Taylor acted intentionally and recklessly in his dealings with Plaintiff as aforesaid.

141.    Defendant Taylor, by arresting and charging Plaintiff, instituted a criminal proceeding against the Plaintiff.

142.    Criminal proceedings against Plaintiff for the alleged possession of a firearm finally terminated on March 15, 2017.

143.    By swearing a false affidavit in support of the arrest, which relied on fabricated evidence, Defendant acted with malice and without probable cause.

144.    Defendant Taylor instituted the prosecution with malice or a purpose other than bringing the Plaintiff to justice.

145.    As a direct result Plaintiff has suffered, and continues to suffer, severe emotional distress.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs.

## COUNT VI
### (Violation of Maryland Declaration of Rights – Officer Taylor, in his official and personal capacity)

146.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

147.    At all times relevant to this Complaint, Defendant Taylor was acting under the color of state law as an Officer employed by Defendant BPD.

148.    Plaintiff submits these claims against the Defendants under Article 24 of the Maryland Declaration of Rights.

149.    Plaintiff incorporates all allegations, including those in the aforementioned claims of excessive force, false imprisonment, false arrest, and intentional infliction of emotional distress, under this claim, and reiterated that Plaintiff has contended violations of Article 24 throughout this Complaint.

150.    Plaintiff further states that the allegations alleged were within the scope of Defendant's employment and were conducted with actual malice as to overcome any limited immunity afforded the Defendant under Article 24.

151.    Plaintiff further states that there is otherwise no immunity to be claimed by any Defendant as to relief sought under Article 24 of the Maryland Declaration of Rights.

152.    This Court may exercise jurisdiction over this claim.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs.

## COUNT VII
### (Use of Excessive Force in the Seizure of Plaintiff in violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985 – Officer Hendrix, in his official and personal capacity)

153. The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

154. At all times relevant to this Complaint, Defendant Hendrix was acting under the color of state law as an Officer employed by Defendant BPD.

155. Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Hendrix was prohibited from using excessive force in his efforts to seize, detain, and/or search Plaintiff Allen.

156. The actions of Defendant Hendrix as detailed herein constitute excessive and unlawful force in gross violation of Plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution and the guarantees set forth in 42 U.S.C. § 1983, 1985, and 1988.

157. Defendant Hendrix's actions, made along with the other Defendant Officers, include, but are not limited to assaulting Plaintiff while he was under arrest.

158. The force used by Defendant Hendrix was intentional, excessive, unreasonable, absent any lawful justification or excuse, unconstitutional, and unlawful force in the restraint and/or apprehension of Plaintiff Allen.

159. As a direct and proximate result of Defendant Hendrix's unlawful and unconstitutional conduct as described herein, Plaintiff has been damaged, and continues to be damaged.

160. Defendant Hendrix's actions as described herein, and his use of force were intentional, wanton, willful, malicious, manifested blatant and reckless disregard for Plaintiff's constitutionally protected rights, and as such Plaintiff is entitled to punitive damages from Defendant Hendrix individually.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT VIII
### (Alternative Use of Excessive Force in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985 – Officer Hendrix, in his official and personal capacity)

161.   The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

162.   This claim is made alternative to Count I.

163.   At all times relevant to this Complaint, Defendant Hendrix was acting under the color of state law as an Officer employed by Defendant BPD.

164.   Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Hendrix was prohibited from intentionally inflicting unnecessary and wanton pain and suffering against Plaintiff.

165.   The actions of Defendant Hendrix as detailed herein constitute excessive and unlawful force in gross violation of Plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution and the guarantees set forth in 42 U.S.C. § 1983, 1985, and 1988.

166.   Upon information and belief, Defendant Hendrix participated in the illegal stop and detention of Plaintiff Allen, during which the officers used excessive and unlawful force against the Plaintiff causing Plaintiff to suffer physical harm.

167.   Upon information and belief, Defendant Hendrix willfully and wantonly inflicted unnecessary pain and suffering upon Plaintiff.

168. The force used by Defendant Hendrix was excessive, unreasonable, absent any legal justification or excuse, and unconstitutional.

169. As a direct and proximate result of Defendant Hendrix's unlawful and unconstitutional conduct as described herein.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT IX
### (Illegal Arrest in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985– Officer Hendrix, in his official and personal capacity)

170. The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

171. At all times relevant to this Complaint, Defendant Hendrix was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

172. The Plaintiff, without being violent, was unlawfully detained and wrongfully arrested and searched by Defendants. Defendant Hendrix did not have a warrant or probable cause to believe that the Plaintiff was involved in any criminal activity.

173. The act of detaining Plaintiff without probable cause or a warrant amounts to illegal arrest.

174. There was no factual basis for the allegation that Plaintiff was armed with a firearm. Nevertheless, Defendant Officers arrested Mr. Allen for illegal possession of a firearm after Defendant Officers planted one at the scene.

175.    The firearm was planted in an attempt to legitimize Defendant's illegal search and seizure of Plaintiff.

176.    The acts committed by Defendant Officers were done maliciously, willfully and wantonly, intentionally, and with reasonable certainty that the acts were in violation of Plaintiff's constitutional rights and would cause harm to Plaintiff.

177.    As a result of the Defendant's conduct and actions, Mr. Allen remained incarcerated for nearly a year and suffered, and will continue to suffer, severe mental anguish and other related expenses.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

### COUNT X
**(False Imprisonment in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985– Officer Hendrix, in his official and personal capacity)**

178.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

179.    At all times relevant to this Complaint, Defendant Hendrix was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

180.    By detaining Plaintiff and denying the Plaintiff s liberty, knowingly without legal justification, the police officers acted with ill will.  There was no proper motivation or legal justification to warrant the arrest in the first place nor the subsequent false imprisonment.

181.    The Plaintiff was detained while his person and surrounding area were searched and was subsequently placed under arrest and taken into custody after a firearm was planted at

the scene.

182.  Such action caused Mr. Allen to be unlawfully deprived of his liberty.

183.  Defendant Hendrix participated in detaining and arresting Plaintiff Allen.

184.  As a result of the actions of Defendant Hendrix, Plaintiff suffered damage by being held against his will for an extended period of time without consent or legal justification.

185.  At all times the Defendant acted with ill will, without legal justification and improper motivation, to wit, covering up an illegal search, seizure, and arrest of an innocent citizen.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

### COUNT XI
**(Malicious Prosecution in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. §1983, 1985 – Officer Hendrix, in his official and personal capacity)**

186.  The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

187.  At all times relevant to this Complaint, Defendant Hendrix was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

188.  Defendant Hendrix acted intentionally and recklessly in his dealings with Plaintiff as aforesaid.

189.  Defendant Hendrix, by arresting and charging Plaintiff, instituted a criminal proceeding against the Plaintiff.

190.  Criminal proceedings against Plaintiff for the alleged possession of a firearm

finally terminated on March 15, 2017.

191.     By swearing a false affidavit in support of the arrest, which relied on fabricated evidence, Defendant acted with malice and without probable cause.

192.     Defendant Hendrix instituted the prosecution with malice or a purpose other than bringing the Plaintiff to justice.

193.     As a direct result Plaintiff has suffered, and continues to suffer, severe emotional distress.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs.

## COUNT XII
**(Violation of Maryland Declaration of Rights – Officer Hendrix, in his official and personal capacity)**

194.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

195.     At all times relevant to this Complaint, Defendant Hendrix was acting under the color of state law as an Officer employed by Defendant BPD.

196.     Plaintiff submits these claims against the Defendants under Article 24 of the Maryland Declaration of Rights.

197.     Plaintiff incorporates all allegations, including those in the aforementioned claims of excessive force, false imprisonment, false arrest, and intentional infliction of emotional distress, under this claim, and reiterated that Plaintiff has contended violations of Article 24 throughout this Complaint.

198.     Plaintiff further states that the allegations alleged were within the scope of Defendant's employment and were conducted with actual malice as to overcome any limited

immunity afforded the Defendant under Article 24.

199.   Plaintiff further states that there is otherwise no immunity to be claimed by any Defendant as to relief sought under Article 24 of the Maryland Declaration of Rights.

200.   This Court may exercise jurisdiction over this claim.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs.

## COUNT XIII
### (Use of Excessive Force in the Seizure of Plaintiff in violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985 – Officer Ward, in his official and personal capacity)

201.   The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

202.   At all times relevant to this Complaint, Defendant Ward was acting under the color of state law as an Officer employed by Defendant BPD.

203.   Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Ward was prohibited from using excessive force in his efforts to seize, detain, and/or search Plaintiff Allen.

204.   The actions of Defendant Ward as detailed herein constitute excessive and unlawful force in gross violation of Plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution and the guarantees set forth in 42 U.S.C. § 1983, 1985, and 1988.

205.   Defendant Ward's actions, made along with the other Defendant Officers, include, but are not limited to assaulting Plaintiff while he was under arrest.

206. The force used by Defendant Ward was intentional, excessive, unreasonable, absent any lawful justification or excuse, unconstitutional, and unlawful force in the restraint and/or apprehension of Plaintiff Allen.

207. As a direct and proximate result of Defendant Ward's unlawful and unconstitutional conduct as described herein, Plaintiff has been damaged, and continues to be damaged.

208. Defendant Ward's actions as described herein, and his use of force were intentional, wanton, willful, malicious, manifested blatant and reckless disregard for Plaintiff's constitutionally protected rights, and as such Plaintiff is entitled to punitive damages from Defendant Ward individually.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XIV
**(Alternative Use of Excessive Force in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985 – Officer Ward, in his official and personal capacity)**

209. The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

210. This claim is made alternative to Count I.

211. At all times relevant to this Complaint, Defendant Ward was acting under the color of state law as an Officer employed by Defendant BPD.

212. Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Ward was prohibited from intentionally inflicting unnecessary and wanton pain and suffering against Plaintiff.

213.   The actions of Defendant Ward as detailed herein constitute excessive and unlawful force in gross violation of Plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution and the guarantees set forth in 42 U.S.C. § 1983, 1985, and 1988.

214.   Upon information and belief, Defendant Ward participated in the illegal stop and detention of Plaintiff Allen, during which the officers used excessive and unlawful force against the Plaintiff causing Plaintiff to suffer physical harm.

215.   Upon information and belief, Defendant Ward willfully and wantonly inflicted unnecessary pain and suffering upon Plaintiff.

216.   The force used by Defendant Ward was excessive, unreasonable, absent any legal justification or excuse, and unconstitutional.

217.   As a direct and proximate result of Defendant Ward's unlawful and unconstitutional conduct as described herein.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

**COUNT XV**
**(Illegal Arrest in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985– Officer Ward, in his official and personal capacity)**

218.   The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

219.   At all times relevant to this Complaint, Defendant Ward was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

220.    The Plaintiff, without being violent, was unlawfully detained and wrongfully arrested and searched by Defendants. Defendant Ward did not have a warrant or probable cause to believe that the Plaintiff was involved in any criminal activity.

221.    The act of detaining Plaintiff without probable cause or a warrant amounts to illegal arrest.

222.    There was no factual basis for the allegation that Plaintiff was armed with a firearm. Nevertheless, Defendant Officers arrested Mr. Allen for illegal possession of a firearm after Defendant Officers planted one at the scene.

223.    The firearm was planted in an attempt to legitimize Defendant's illegal search and seizure of Plaintiff.

224.    The acts committed by Defendant Officers were done maliciously, willfully and wantonly, intentionally, and with reasonable certainty that the acts were in violation of Plaintiff's constitutional rights and would cause harm to Plaintiff.

225.    As a result of the Defendant's conduct and actions, Mr. Allen remained incarcerated for nearly a year and suffered, and will continue to suffer, severe mental anguish and other related expenses.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## **COUNT XVI**
**(False Imprisonment in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985– Officer Ward, in his official and personal capacity)**

226.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

227.    At all times relevant to this Complaint, Defendant Ward was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

228.    By detaining Plaintiff and denying the Plaintiff s liberty, knowingly without legal justification, the police officers acted with ill will.  There was no proper motivation or legal justification to warrant the arrest in the first place nor the subsequent false imprisonment.

229.    The Plaintiff was detained while his person and surrounding area were searched and was subsequently placed under arrest and taken into custody after a firearm was planted at the scene.

230.    Such action caused Mr. Allen to be unlawfully deprived of his liberty.

231.    Defendant Ward participated in detaining and arresting Plaintiff Allen.

232.    As a result of the actions of Defendant Ward, Plaintiff suffered damage by being held against his will for an extended period of time without consent or legal justification.

233.    At all times the Defendant acted with ill will, without legal justification and improper motivation, to wit, covering up an illegal search, seizure, and arrest of an innocent citizen.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

**COUNT VII**
**(Malicious Prosecution in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. §1983, 1985 – Officer Ward, in his official and personal capacity)**

234.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

235.     At all times relevant to this Complaint, Defendant Ward was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

236.     Defendant Ward acted intentionally and recklessly in his dealings with Plaintiff as aforesaid.

237.     Defendant Ward, by arresting and charging Plaintiff, instituted a criminal proceeding against the Plaintiff.

238.     Criminal proceedings against Plaintiff for the alleged possession of a firearm finally terminated on March 15, 2017.

239.     By swearing a false affidavit in support of the arrest, which relied on fabricated evidence, Defendant acted with malice and without probable cause.

240.     Defendant Ward instituted the prosecution with malice or a purpose other than bringing the Plaintiff to justice.

241.     As a direct result Plaintiff has suffered, and continues to suffer, severe emotional distress.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs.

## COUNT XVIII
**(Violation of Maryland Declaration of Rights – Officer Ward, in his official and personal capacity)**

242.     The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

243.     At all times relevant to this Complaint, Defendant Ward was acting under the color of state law as an Officer employed by Defendant BPD.

244.    Plaintiff submits these claims against the Defendants under Article 24 of the Maryland Declaration of Rights.

245.    Plaintiff incorporates all allegations, including those in the aforementioned claims of excessive force, false imprisonment, false arrest, and intentional infliction of emotional distress, under this claim, and reiterated that Plaintiff has contended violations of Article 24 throughout this Complaint.

246.    Plaintiff further states that the allegations alleged were within the scope of Defendant's employment and were conducted with actual malice as to overcome any limited immunity afforded the Defendant under Article 24.

247.    Plaintiff further states that there is otherwise no immunity to be claimed by any Defendant as to relief sought under Article 24 of the Maryland Declaration of Rights.

248.    This Court may exercise jurisdiction over this claim.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs.

## COUNT XIX
**(Use of Excessive Force in the Seizure of Plaintiff in violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985 – Officer Jenkins, in his official and personal capacity)**

249.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

250.    At all times relevant to this Complaint, Defendant Jenkins was acting under the color of state law as an Officer employed by Defendant BPD.

251.    Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Jenkins was prohibited from using excessive force in his efforts to seize, detain, and/or search Plaintiff Allen.

252. The actions of Defendant Jenkins as detailed herein constitute excessive and unlawful force in gross violation of Plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution and the guarantees set forth in 42 U.S.C. § 1983, 1985, and 1988.

253. Defendant Jenkins's actions, made along with the other Defendant Officers, include, but are not limited to assaulting Plaintiff while he was under arrest.

254. The force used by Defendant Jenkins was intentional, excessive, unreasonable, absent any lawful justification or excuse, unconstitutional, and unlawful force in the restraint and/or apprehension of Plaintiff Allen.

255. As a direct and proximate result of Defendant Jenkins's unlawful and unconstitutional conduct as described herein, Plaintiff has been damaged, and continues to be damaged.

256. Defendant Jenkins's actions as described herein, and his use of force were intentional, wanton, willful, malicious, manifested blatant and reckless disregard for Plaintiff's constitutionally protected rights, and as such Plaintiff is entitled to punitive damages from Defendant Jenkins individually.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XX
### (Alternative Use of Excessive Force in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985 – Officer Jenkins, in his official and personal capacity)

257. The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

258. This claim is made alternative to Count I.

259. At all times relevant to this Complaint, Defendant Jenkins was acting under the color of state law as an Officer employed by Defendant BPD.

260. Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Jenkins was prohibited from intentionally inflicting unnecessary and wanton pain and suffering against Plaintiff.

261. The actions of Defendant Jenkins as detailed herein constitute excessive and unlawful force in gross violation of Plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution and the guarantees set forth in 42 U.S.C. § 1983, 1985, and 1988.

262. Upon information and belief, Defendant Jenkins participated in the illegal stop and detention of Plaintiff Allen, during which the officers used excessive and unlawful force against the Plaintiff causing Plaintiff to suffer physical harm.

263. Upon information and belief, Defendant Jenkins willfully and wantonly inflicted unnecessary pain and suffering upon Plaintiff.

264. The force used by Defendant Jenkins was excessive, unreasonable, absent any legal justification or excuse, and unconstitutional.

265. As a direct and proximate result of Defendant Jenkins's unlawful and unconstitutional conduct as described herein.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XXI
**(Illegal Arrest in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985– Officer Jenkins, in his official and personal capacity)**

266. The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

267. At all times relevant to this Complaint, Defendant Jenkins was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

268. The Plaintiff, without being violent, was unlawfully detained and wrongfully arrested and searched by Defendants. Defendant Jenkins did not have a warrant or probable cause to believe that the Plaintiff was involved in any criminal activity.

269. The act of detaining Plaintiff without probable cause or a warrant amounts to illegal arrest.

270. There was no factual basis for the allegation that Plaintiff was armed with a firearm. Nevertheless, Defendant Officers arrested Mr. Allen for illegal possession of a firearm after Defendant Officers planted one at the scene.

271. The firearm was planted in an attempt to legitimize Defendant's illegal search and seizure of Plaintiff.

272. The acts committed by Defendant Officers were done maliciously, willfully and wantonly, intentionally, and with reasonable certainty that the acts were in violation of Plaintiff's constitutional rights and would cause harm to Plaintiff.

273. As a result of the Defendant's conduct and actions, Mr. Allen remained incarcerated for nearly a year and suffered, and will continue to suffer, severe mental anguish and other related expenses.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XXII
### (False Imprisonment in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. § 1983, 1985– Officer Jenkins, in his official and personal capacity)

274. The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

275. At all times relevant to this Complaint, Defendant Jenkins was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

276. By detaining Plaintiff and denying the Plaintiff s liberty, knowingly without legal justification, the police officers acted with ill will. There was no proper motivation or legal justification to warrant the arrest in the first place nor the subsequent false imprisonment.

277. The Plaintiff was detained while his person and surrounding area were searched and was subsequently placed under arrest and taken into custody after a firearm was planted at the scene.

278. Such action caused Mr. Allen to be unlawfully deprived of his liberty.

279. Defendant Jenkins participated in detaining and arresting Plaintiff Allen.

280. As a result of the actions of Defendant Jenkins, Plaintiff suffered damage by being held against his will for an extended period of time without consent or legal justification.

281. At all times the Defendant acted with ill will, without legal justification and improper motivation, to wit, covering up an illegal search, seizure, and arrest of an innocent citizen.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XXIII
**(Malicious Prosecution in the violation of the 4th and 14th Amendments, Pursuant to 42 U.S.C. §1983, 1985 – Officer Jenkins, in his official and personal capacity)**

282. The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

283. At all times relevant to this Complaint, Defendant Jenkins was acting under the color of state law as an Officer employed by Defendant BPD and was acting within the scope of his employment.

284. Defendant Jenkins acted intentionally and recklessly in his dealings with Plaintiff as aforesaid.

285. Defendant Jenkins, by arresting and charging Plaintiff, instituted a criminal proceeding against the Plaintiff.

286. Criminal proceedings against Plaintiff for the alleged possession of a firearm finally terminated on March 15, 2017.

287. By swearing a false affidavit in support of the arrest, which relied on fabricated evidence, Defendant acted with malice and without probable cause.

288. Defendant Jenkins instituted the prosecution with malice or a purpose other than bringing the Plaintiff to justice.

289. As a direct result Plaintiff has suffered, and continues to suffer, severe emotional distress.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs.

### COUNT XXIV
**(Violation of Maryland Declaration of Rights – Officer Jenkins, in his official and personal capacity)**

290.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

291.    At all times relevant to this Complaint, Defendant Jenkins was acting under the color of state law as an Officer employed by Defendant BPD.

292.    Plaintiff submits these claims against the Defendants under Article 24 of the Maryland Declaration of Rights.

293.    Plaintiff incorporates all allegations, including those in the aforementioned claims of excessive force, false imprisonment, false arrest, and intentional infliction of emotional distress, under this claim, and reiterated that Plaintiff has contended violations of Article 24 throughout this Complaint.

294.    Plaintiff further states that the allegations alleged were within the scope of Defendant's employment and were conducted with actual malice as to overcome any limited immunity afforded the Defendant under Article 24.

295.    Plaintiff further states that there is otherwise no immunity to be claimed by any Defendant as to relief sought under Article 24 of the Maryland Declaration of Rights.

296.    This Court may exercise jurisdiction over this claim.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs.

## COUNT XXV
### (Civil Conspiracy Pursuant to 42 U.S.C. §1983, 1985 – Defendants Taylor, Hendrix, Ward, and Jenkins)

297.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

298.    At all times pertinent to the complaint, Defendants Taylor, Hendrix, Ward, and Jenkins entered in to a civil conspiracy with each other and other members of the Defendant to hide the unit's use of illegal arrest, robbery, drug dealing and violence on the streets of Baltimore City.

299.    These actions include, but are not limited to, making material misrepresentations of fact or omissions to tribunals, namely the Circuit Court for Baltimore City, specifically in the matter of Kendall English detailed above, and participating in the violation of citizens' civil rights, specifically using excessive force, affecting illegal arrests, and illegally seizing citizens' money and valuables.

300.    As a result of this civil conspiracy, Plaintiff was subject to unlawful search, arrest, detention and injuries two years before the first Defendant Officers were publicly indicted.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XXVI
### (Civil Conspiracy Pursuant to 42 U.S.C. §1983, 1985 – Defendant BPD)

301.    The above and all other paragraphs herein are incorporated by reference as if fully set forth.

302.    At all times pertinent to the complaint, Defendant BPD entered in to a civil conspiracy with the named Officer Defendants to facilitate and enable members of the Defendant

BPD's force to hide the unit's use of illegal arrest, robbery, drug dealing and violence on the streets of Baltimore City.

303.    These actions include, but are not limited to, making material misrepresentations of fact or omissions surrounding their illegal detention of Plaintiff, including but not limited to the fabrication of evidence.

304.    Additionally, failing to conduct meaningful Internal Affairs investigation despite being confronted with allegations that Officer Defendants were engaging in a pattern of illegal searches, seizures, and arrests, continuing to employ the Officer Defendants after findings of illegal activity were made, and failing to reprimand the officers for conducting such illegal activity while performing their duties as officers of the BPD.

305.    As a result of this civil conspiracy, Plaintiff was subject to unlawful arrest, detention and injuries two years before the first members of the conspiracy were publicly indicted.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

### <u>COUNT XVII</u>
### (Aider & Abettor Pursuant to 42 U.S.C. §1983, 1985 – Defendant BPD)

306.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

307.    At all times, Defendant BPD provided substantial assistance, aid, and encouragement to the Gun Trace Task Force and its members' criminal activities.

308.    Defendant BPD had actual knowledge of the wrongful conduct of the its members and their role in furthering such conduct through failing to investigate and reprimand any of the officers involved despite actual knowledge of illegal activity.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

**COUNT XXVII**
**(Unconstitutional Custom or Practice of Excessive Use of Force, Unlawful Arrest, and Improper use of Police Powers Pursuant to 42 U.S.C. §1983, 1985 – Defendant BPD)**

309.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

310.    Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant BPD is prohibited from allowing its officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise its law enforcement officers in the proper use of force, arrest procedures and use of police powers.

311.    As alleged herein, Defendants Hendrix, Ward, Jenkins, Taylor, and other officers of the Gun Trace Task Force, and thereby, Defendant BPD has engaged in a pattern, practice, policy, or custom of allowing BPD officers to use excessive and unlawful force in connection with subduing and/or apprehending individuals. Defendant BPD has also engaged in a pattern, practice, policy, or custom of allowing BPD officers to conduct unlawful arrests, unlawful searches, unlawful seizures and has permitted officers to conduct further improper use of police powers.

312.    After indictments were unsealed in the United States District Court for the District of Maryland, Plaintiff became aware that Officer Defendants had a long documented disciplinary record of violating the civil rights of Baltimore City residents including, but not limited to, an overwhelming number of Internal Affairs complaints, in addition to a number of settled lawsuits alleging this conduct by the named Officer Defendants. The policy and practice of returning these

Officers to their normal employment with the BPD without adequate training and supervision made the violation of Plaintiff and other citizens' rights not a mere possibility, but a certainty.

313.   Upon information and belief, Defendant BPD's officers have been allowed to use excessive and engage in unlawful practices absent proper supervision or consequence, including excessive physical force, illegal search and seizures, and improper use of police powers.

314.   As alleged herein, Defendant BPD entered in to a civil conspiracy with the members of the Defendant BPD's Gun Trace Task Force to hide the unit's use of robbery, drug dealing and violence on the streets of Baltimore City.

315.   As alleged herein, the actions by all named Defendants was unreasonable, excessive, absent any lawful justification and/or excuse, and was in keeping with the pattern practice, police and/or custom of the Defendant BPD.

316.   Upon information and belief, Defendant BPD has failed to discipline any of the named Officers, or anyone else for the conduct alleged herein, and as such has further ratified their improper, willful, wanton, and unlawful actions with respect to their improper uses of police powers.

317.   Defendant BPD's failure to take remedial actions against the pervasive and unreasonable misconducts of these police officers was a proximate cause of Plaintiff's injuries.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## <u>COUNT XXVIII</u>
**(Inadequate Training Pursuant to 42 U.S.C. §1983, 1985 – Defendant BPD)**

318.   The above and all other paragraphs herein are incorporated by reference as if fully set forth.

319. Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant BPD is prohibited from allowing its officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise to its law enforcement officers in the proper use of force, arrest procedures and use of police powers.

320. As alleged herein, Defendants Hendrix, Ward, Jenkins, Taylor, and other officers of the Gun Trace Task Force, and thereby, Defendant BPD has engaged in a pattern, practice, policy, or custom allowing BPD officers to misuse police powers in connection with apprehending and/or arresting individuals and in so doing have failed to properly train Defendant BPD officers.

321. After indictments were unsealed in the United States District Court for the District of Maryland, Plaintiff became aware that Officer Defendants had a long documented disciplinary record of violating the civil rights of Baltimore City residents including, but not limited to, an overwhelming number of Internal Affairs complaints, in addition to a number of settled lawsuits alleging this conduct by the named Officer Defendants. The policy and practice of returning these Officers to their normal employment with the BPD without adequate training and supervision made the violation of Plaintiff and other citizens' rights not a mere possibility, but a certainty.

322. At all relevant times Defendant BPD, directly and through its employees, agents, and deputies, had an obligation to ensure that its employees, agents, and deputies exercised the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the training of all employees, agents, and deputies under its direction and control.

323. Upon information and belief, Defendant BPD's officers have been allowed to engage in unlawful practices absent proper training, including excessive force, unlawful arrest, and improper use of police powers.

324. It was readily foreseeable and highly predictable that failing to properly train Defendant BPD's officers in the proper application of force would, and in fact did, result in the violation of Plaintiff's constitutional rights as alleged herein, and State's Attorney's Office for Baltimore City was indifferent to same.

325. As alleged herein, the actions by all named Defendants was unreasonable, excessive, absent any lawful justification and/or excuse, and it was a direct result of Defendant BPD's failure to adequately train its officers in dealing in proper use of force, search and seizure and use of police powers.

326. As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and it was a direct result of Defendant BPD's failure to adequately train its officers in dealing in proper arrest, search and seizure and use of police powers.

327. As a direct and proximate result of Defendant BPD's failure adequately train its officers and employees, Plaintiff was injured as detailed herein and has suffered, and continues to suffer.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XXIX
### (Failure to Supervise Pursuant to 42 U.S.C. §1983, 1985– Defendant BPD)

328. The above and all other paragraphs herein are incorporated by reference as if fully set forth.

329. Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant BPD is prohibited from allowing its officers to engage in a pattern, practice, policy or

custom of violating citizens' constitutional rights and is obligated to train and supervise to its law enforcement officers in the proper arrest procedures and use of police powers.

330.     After indictments were unsealed in the United States District Court for the District of Maryland, Plaintiff became aware that Officer Defendants had a long documented disciplinary record of violating the civil rights of Baltimore City residents including, but not limited to, an overwhelming number of Internal Affairs complaints, in addition to a number of settled lawsuits alleging this conduct by the named Officer Defendants. The policy and practice of returning these Officers to their normal employment with the BPD without adequate training and supervision made the violation of Plaintiff and other citizens' rights not a mere possibility, but a certainty.

331.     At all relevant times, Defendant BPD, directly and through its employees, agents, and deputies, had an obligation to ensure that its employees, agents, and deputies exercised the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the supervision of all employees, agents, and deputies under its direction and control.

332.     Upon information and belief, the supervision provided and/or required by Defendant BPD regarding proper arrest procedures and use of police powers was inadequate, insufficient, or nonexistent, and Defendant BPD, directly and through its employees, agents and deputies, failed to exercise the above requisite degree of care in the supervision of all employees, agents, and deputies under his direction and control.

333.     As alleged herein, Defendants Taylor, Hendrix, Ward, Jenkins, and other officers of its force, and thereby, Defendant BPD have engaged in a pattern, practice, policy, or custom of allowing BPD officers to misuse police powers in connection with apprehending and/or arresting individuals and in so doing have failed to properly supervise Defendant BPD officers in the proper arrest procedures and use of police powers.

334.   It was readily foreseeable and highly predictable that failing to properly supervise Defendant BPD's officers in the proper arrest procedures and use of police powers would, and in fact did, result in the violation of Plaintiff's constitutional rights as alleged herein and Defendant BPD was indifferent to same.

335.   As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and it was a direct result of Defendant BPD's failure to adequately supervise its officers.

336.   As a direct and proximate result of Defendant BPD's failure to adequately supervise its officers and employees, Plaintiff was injured as detailed herein and has suffered, and continues to suffer damages.

337.   Defendant BPD's failure to properly supervise its officers and employees was tantamount to deliberate indifference.

338.   Defendant BPD's failure to adequately supervise further confirms the aforementioned pattern and practice.

339.   As alleged herein, Defendant BPD has engaged in a pattern, practice, policy, or custom of allowing Defendant BPD's officers to fabricate evidence, conduct illegal arrests, searches, and seizures, and improperly use police powers.

340.   Defendant BPD's was aware, and should have foreseen, that Defendant BPD's officers would confront situations as that presented by Plaintiff.

341.   Upon information and belief, situations involving illegal conduct similar to that which resulted in the deprivation of Plaintiff's constitutional rights and the injuries detailed herein, have previously been experienced by Defendant BPD and have been similarly mishandled by Defendant BPD as alleged herein.

342.   As alleged herein, Defendant BPD entered in to a civil conspiracy with the members of its force to hide the unit's use of illegal arrest, robbery, drug dealing and violence on the streets of Baltimore City.

343.   Defendant BPD's improper handling of incidents of planted evidence, illegal arrest and improper use of police powers committed by Defendant BPD's officers such as those detailed herein will frequently, and did in the instant case, result in the deprivation of individual constitutional rights as alleged herein.

344.   As a direct and proximate result of Defendant BPD's deliberate indifference to the supervision of its officers and employees as herein detailed, Plaintiff has been injured, and continues to suffer injury.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XXX
**(Unconstitutional Custom or Practice of Excessive Use of Force, Unlawful Arrest, and Improper use of Police Powers Pursuant to 42 U.S.C. §1983, 1985 – Defendant Allers, in his personal and official capacity)**

345.   The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

346.   Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant BPD is prohibited from allowing its officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise its law enforcement officers in the proper use of force, arrest procedures and use of police powers.

347. As stated in his plea agreement stemming from his federal indictment, Defendant Allers regularly participated in illegal use of police powers with the other named Officer Defendants.

348. As alleged herein, Defendant Allers has engaged in a pattern, practice, policy, or custom of allowing the named BPD officers to use excessive and unlawful force in connection with subduing and/or apprehending individuals. Defendant Allers has also engaged in a pattern, practice, policy, or custom of allowing the named Defendant officers to conduct unlawful arrests, unlawful searches, unlawful seizures and has permitted officers to conduct further improper use of police powers.

349. As alleged herein, Defendant Allers was employed by Defendant BPD as the supervisor of the Gun Trace Task Force, and was therefore the supervisor of Defendants Taylor, Hendrix, Ward, and Jenkins.

350. Upon information and belief, Defendant Allers permitted the named Defendant officers to engage in unlawful practices absent proper supervision or consequence, including excessive physical force, illegal search and seizures, and improper use of police powers.

351. As alleged herein, the actions by all named Defendants was unreasonable, excessive, absent any lawful justification and/or excuse, and was in keeping with the pattern practice, police and/or custom of the Defendant Allers.

352. Upon information and belief, Defendant Allers has failed to discipline any of the named Officers, or anyone else for the conduct alleged herein, and as such has further ratified their improper, willful, wanton, and unlawful actions with respect to their excessive, unlawful use of force, and other improper uses of police powers.

353. Upon information and belief, Defendant Allers not only failed to discipline any of the officers, but also partook in the ongoing corruption of the Gun Trace Task Force, including,

but not limited to, partaking in thefts of innocent citizens, while acting in his official capacity as supervisor of the Gun Trace Task Force.

354.    Defendant Allers' failure to take remedial actions against the pervasive and unreasonable misconducts of these police officers was a proximate cause of Plaintiff's injuries.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XXXI
**(Inadequate Training Pursuant to 42 U.S.C. §1983, 1985 – Defendant Allers, in his personal and official capacity)**

355.    The above and all other paragraphs herein are incorporated by reference as if fully set forth.

356.    Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant BPD is prohibited from allowing its officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise to its law enforcement officers in the proper use of force, arrest procedures and use of police powers.

357.    As alleged herein, Defendant Allers has engaged in a pattern, practice, policy, or custom of allowing named Defendant officers to use excessive and unlawful force in connection with subduing and/or apprehending individuals and in so doing have failed to properly train the named Defendant BPD officers.

358.    At all relevant times Defendant Allers, had an obligation exercise the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the training of all employees, agents, and deputies under its direction and control.

359.    Upon information and belief, Defendant Allers permitted the named Defendant officers to engage in unlawful practices absent proper training, including excessive force, illegal search and seizure, and improper use of police powers.

360.    It was readily foreseeable and highly predictable that failing to properly train the named Defendant officers in the proper application of force would, and in fact did, result in the violation of Plaintiff's constitutional rights as alleged herein, and Defendant Allers was indifferent to same.

361.    As alleged herein, the actions by all named Defendants was unreasonable, excessive, absent any lawful justification and/or excuse, and it was a direct result of Defendant Allers' failure to adequately train his officers in dealing in proper use of force, search and seizure and use of police powers.

362.    As a direct and proximate result of Defendant Allers' failure adequately train his officers, Plaintiff was injured as detailed herein and has suffered, and continues to suffer.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

### COUNT XXXII
**(Failure to Supervise to 42 U.S.C. §1983, 1985 – Defendant Allers, in his personal and official capacity)**

363.    The above and all other paragraphs herein are incorporated by reference as if fully set forth.

364.    Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Allers is prohibited from allowing the named Defendant officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to

train and supervise to its law enforcement officers in the proper use of force, arrest procedures and use of police powers.

365.    As stated in his plea agreement stemming from his federal indictment, Defendant Allers regularly participated in illegal use of police powers with the other named Officer Defendants.

366.    At all relevant times, Defendant Allers had an obligation to ensure that the named Defendant officers exercised the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the supervision of all employees, agents, and deputies under its direction and control.

367.    Upon information and belief, the supervision provided and/or required by Defendant Allers regarding proper use of force, arrest procedures and use of police powers was inadequate, insufficient, or nonexistent, and Defendant Allers failed to exercise the above requisite degree of care in the supervision of all employees, agents, and deputies under his direction and control.

368.    As alleged herein, Defendants Hendrix, Ward, Jenkins, Taylor, and other officers of the Gun Trace Task Force, and thereby, Defendant Allers has engaged in a pattern, practice, policy, or custom of allowing the named Defendant officers to use excessive and unlawful force in connection with subduing and/or apprehending individuals and in so doing have failed to properly supervise the named Defendant officers in the proper use of force, arrest procedures and use of police powers.

369.    It was readily foreseeable and highly predictable that failing to properly supervise the named Defendant officers in the proper use of force, arrest procedures and use of police powers would, and in fact did, result in the violation of Plaintiff's constitutional rights as alleged herein and Defendant Allers was indifferent to same.

370. As alleged herein, the actions by all named Defendants was unreasonable, excessive, absent any lawful justification and/or excuse, and it was a direct result of Defendant Allers' failure to adequately supervise its officers.

371. As a direct and proximate result of Defendant Allers' failure to adequately supervise its attorneys and employees, Plaintiff was injured as detailed herein and has suffered, and continues to suffer damages.

372. Defendant Allers' failure to properly supervise his officers, the named Defendant officers of this complaint, was tantamount to deliberate indifference.

373. Defendant Allers' failure to adequately supervise further confirms the aforementioned pattern and practice.

374. As alleged herein, Defendant Allers has engaged in a pattern, practice, policy, or custom of allowing the named Defendant officers to use excessive and unlawful force, conduct illegal arrests, searches, and seizures, and improperly use police powers.

375. Defendant Allers was aware, and should have foreseen, that the named Defendant officers would confront situations as that presented by Plaintiff.

376. Upon information and belief, situations involving illegal conduct similar to that which resulted in the deprivation of Plaintiff's constitutional rights and the injuries detailed herein, have previously been experienced by Defendant Allers and have been similarly mishandled by Defendant Allers as alleged herein.

377. Defendant Allers' improper handling of incidents of excessive use of force, illegal arrest and improper use of police powers committed by the named Defendant officers such as those detailed herein will frequently, and did in the instant case, result in the deprivation of individual constitutional rights as alleged herein.

378.    As a direct and proximate result of Defendant Allers' deliberate indifference to the supervision of his officers as herein detailed, Plaintiff has been injured, and continues to suffer injury.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XXXII
**(Unconstitutional Custom or Practice of Excessive Use of Force, Unlawful Arrest, and Improper use of Police Powers Pursuant to 42 U.S.C. §1983, 1985 – Defendant Dombroski, in his personal and official capacity)**

379.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

380.    Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Dombrowski is prohibited from allowing his officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise his law enforcement officers in the proper arrest procedures and use of police powers.

381.    As alleged herein, Defendant Dombrowski has engaged in a pattern, practice, policy, or custom of allowing the named Officer Defendants to conduct unlawful arrests, unlawful searches, unlawful seizures and has permitted officers to conduct further improper use of police powers.

382.    As alleged herein, Defendant Dombrowski was employed by Defendant BPD as a Major of the Internal Affairs Division.

383.    Upon information and belief, Defendant Dombrowski, through his lack of investigation into the officers despite numerous complaints of their illegal activity, permitted the named Officer Defendants to engage in unlawful practices absent proper supervision or

consequence, including unlawful arrests, illegal search and seizures, and improper use of police powers.

384. As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and was in keeping with the pattern practice, police and/or custom of Defendant Dombrowski.

385. Upon information and belief, Defendant Dombrowski has failed to discipline any of the named Officers, or anyone else for the conduct alleged herein, and as such has further ratified their improper, willful, wanton, and unlawful actions with respect to their improper uses of police powers.

386. Upon information and belief, Defendant Dombrowski failed to discipline any of the officers, while acting in his official capacity as a Major of the Internal Affairs Division despite a long record of complaints made against Officer Defendants.

387. Defendant Dombrowski's failure to take remedial actions against the pervasive and unreasonable misconducts of these police officers was a proximate cause of Plaintiff's injuries.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## COUNT XXXIII
### (Failure to Supervise to 42 U.S.C. §1983, 1985 – Defendant Dombroski, in his personal and official capacity)

388. The above and all other paragraphs herein are incorporated by reference as if fully set forth.

389. Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Dombrowski is prohibited from allowing the named Officer Defendants to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise to its law enforcement officers in the proper arrest procedures and use of police powers.

390. At all relevant times, Defendant Dombrowski had an obligation to ensure that the named Officer Defendants exercised the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the supervision of all employees, agents, and deputies under his direction and control.

391. Upon information and belief, the supervision provided and/or required by Defendant Dombrowski regarding proper arrest procedures and use of police powers was inadequate, insufficient, or nonexistent, and Defendant Dombrowski failed to exercise the above requisite degree of care in the supervision of all employees, agents, and deputies under his direction and control.

392. Prior to the events involving Plaintiff, Defendant Dombrowski, as Major of Internal Affairs, knew or should have known of the nature of Officer Defendants' systemic civil rights violations based on the number of Internal Affairs complaints alleged against the Officer Defendants.

393. As alleged herein, Defendants Taylor, Ivery, Ward, and other officers of Baltimore Police Department, and thereby, Defendant Dombrowski has engaged in a pattern, practice, policy, or custom of allowing the named Officer Defendants to misuse police powers in connection with apprehending and/or arresting individuals and in so doing have failed to properly supervise the named Officer Defendants in the proper arrest procedures and use of police powers.

394.    It was readily foreseeable and highly predictable that failing to properly supervise the named Officer Defendants in the proper arrest procedures and use of police powers, including failing to investigate and take remedial actions for improper police actions, would, and in fact did, result in the violation of Plaintiff's constitutional rights as alleged herein and Defendant Dombrowski was indifferent to same.

395.    As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and it was a direct result of Defendant Dombrowski's failure to adequately supervise his officers.

396.    As a direct and proximate result of Defendant Dombrowski's failure to adequately supervise his officers and employees, Plaintiff was injured as detailed herein and has suffered, and continues to suffer damages.

397.    Defendant Dombrowski's failure to properly supervise Defendant BPD's officers was tantamount to deliberate indifference.

398.    Defendant Dombrowski's failure to adequately supervise further confirms the aforementioned pattern and practice.

399.    As alleged herein, Defendant Dombrowski has engaged in a pattern, practice, policy, or custom of allowing Defendant BPD's officers to plant evidence, conduct illegal arrests, searches, and seizures, and improperly use police powers.

400.    Defendant Dombrowski was aware, and should have foreseen, that the named Officer Defendants would confront situations as that presented by Plaintiff.

401.    Upon information and belief, situations involving illegal conduct similar to that which resulted in the deprivation of Plaintiff's constitutional rights and the injuries detailed herein, have previously been experienced by Defendant Dombrowski and have been similarly mishandled by Defendant Dombrowski as alleged herein.

402.    Defendant Dombrowski's improper handling of allegations of planted evidence, illegal arrest and improper use of police powers committed by the named Officer Defendants such as those detailed herein will frequently, and did in the instant case, result in the deprivation of individual constitutional rights as alleged herein.

403.    As a direct and proximate result of Defendant Dombrowski's deliberate indifference to the supervision of Defendant BPD's officers as herein detailed, Plaintiff has been injured, and continues to suffer injury.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

### COUNT XXXIV
**(Unconstitutional Custom or Practice of Excessive Use of Force, Unlawful Arrest, and Improper use of Police Powers Pursuant to 42 U.S.C. §1983, 1985 – Defendant Palmere, in his personal and official capacity)**

404.    The foregoing and all other paragraphs herein are incorporated by reference as if fully set forth.

405.    Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Palmere is prohibited from allowing his officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise his law enforcement officers in the proper arrest procedures and use of police powers.

406.    As alleged herein, Defendant Palmere has engaged in a pattern, practice, policy, or custom of allowing the named Officer Defendants to conduct unlawful arrests, unlawful searches, unlawful seizures and has permitted officers to conduct further improper use of police powers.

407.    During the criminal proceedings against Defendant Ward, testimony was elicited from various witnesses that Defendant Palmere had intimate knowledge of the widespread

misconduct of the plainclothes officers, including Officer Defendants. This testimony included, but was not limited to, testimony regarding Defendant Palmere coaching police officers to fabricate evidence in the murder of another Baltimore citizen, Shawn Cannady.

408. As alleged herein, Defendant Palmere was employed by Defendant BPD as a Deputy Police Commissioner.

409. Upon information and belief, Defendant Palmere, through his lack of investigation into the officers despite numerous complaints of their illegal activity, permitted the named Officer Defendants to engage in unlawful practices absent proper supervision or consequence, including unlawful arrests, illegal search and seizures, and improper use of police powers.

410. As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and was in keeping with the pattern practice, police and/or custom of Defendant Palmere.

411. Upon information and belief, Defendant Palmere has failed to discipline any of the named Officers, or anyone else for the conduct alleged herein, and as such has further ratified their improper, willful, wanton, and unlawful actions with respect to their improper uses of police powers.

412. Upon information and belief, Defendant Palmere failed to discipline any of the officers, while acting in his official capacity as a Deputy Police Commissioner.

413. Defendant Palmere's failure to take remedial actions against the pervasive and unreasonable misconducts of these police officers was a proximate cause of Plaintiff's injuries.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

**COUNT XXXV**
**(Inadequate Training Pursuant to 42 U.S.C. §1983, 1985– Defendant Palmere, in his personal and official capacity)**

414.    The above and all other paragraphs herein are incorporated by reference as if fully set forth.

415.    Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Palmere is prohibited from allowing his officers to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to train and supervise to its law enforcement officers in the proper arrest procedures and use of police powers.

416.    As alleged herein, Defendant Palmere has engaged in a pattern, practice, policy, or custom of allowing named Officer Defendants to misuse police powers in connection with apprehending and/or arresting individuals and in so doing have failed to properly train Defendant BPD officers.

417.    During the criminal proceedings against Defendant Ward, testimony was elicited from various witnesses that Defendant Palmere had intimate knowledge of the widespread misconduct of the plainclothes officers, including Officer Defendants. This testimony included, but was not limited to, testimony regarding Defendant Palmere coaching police officers to fabricate evidence in the murder of another Baltimore citizen, Shawn Cannady.

418.    At all relevant times Defendant Palmere, had an obligation exercise the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the training of all employees, agents, and deputies under its direction and control.

419.   Upon information and belief, Defendant Palmere permitted the named Officer Defendants to engage in unlawful practices absent proper training, including unlawful arrest, illegal search and seizure, and improper use of police powers.

420.   It was readily foreseeable and highly predictable that failing to properly train the named Officer Defendants in the proper use of police powers would, and in fact did, result in the violation of Plaintiff's constitutional rights as alleged herein, and Defendant Palmere was indifferent to same.

421.   As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and it was a direct result of Defendant Palmere's failure to adequately train his officers in dealing in proper arrest procedures, search and seizure and use of police powers.

422.   As a direct and proximate result of Defendant Palmere's failure adequately train his officers, Plaintiff was injured as detailed herein and has suffered, and continues to suffer.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

**COUNT XXXVI**
**(Failure to Supervise Pursuant to 42 U.S.C. §1983, 1985– Defendant Palmere, in his personal and official capacity)**

423.   The above and all other paragraphs herein are incorporated by reference as if fully set forth.

424.   Under the Fourth and Fourteenth Amendments to the United States Constitution, Defendant Palmere is prohibited from allowing the named Officer Defendants to engage in a pattern, practice, policy or custom of violating citizens' constitutional rights and is obligated to

train and supervise to its law enforcement officers in the proper arrest procedures and use of police powers.

425.    During the criminal proceedings against Defendant Ward, testimony was elicited from various witnesses that Defendant Palmere had intimate knowledge of the widespread misconduct of the plainclothes officers, including Officer Defendants. This testimony included, but was not limited to, testimony regarding Defendant Palmere coaching police officers to fabricate evidence in the murder of another Baltimore citizen, Shawn Cannady.

426.    At all relevant times, Defendant Palmere had an obligation to ensure that the named Officer Defendants exercised the same degree of care that a reasonable and prudent person would exercise in the same or similar situation with respect to the supervision of all employees, agents, and deputies under his direction and control.

427.    Upon information and belief, the supervision provided and/or required by Defendant Palmere regarding proper arrest procedures and use of police powers was inadequate, insufficient, or nonexistent, and Defendant Palmere failed to exercise the above requisite degree of care in the supervision of all employees, agents, and deputies under his direction and control.

428.    As alleged herein, Defendants Taylor, Ivery, Ward, and other officers of the Baltimore Police Department, and thereby, Defendant Palmere has engaged in a pattern, practice, policy, or custom of allowing the named Officer Defendants to misuse police powers in connection with apprehending and/or arresting individuals and in so doing have failed to properly supervise the named Officer Defendants in the proper arrest procedures and use of police powers.

429.    It was readily foreseeable and highly predictable that failing to properly supervise the named Officer Defendants in the proper arrest procedures and use of police powers, including failing to investigate and take remedial actions for improper police actions, would, and

in fact did, result in the violation of Plaintiff's constitutional rights as alleged herein and Defendant Palmere was indifferent to same.

430.    As alleged herein, the actions by all named Defendants was unreasonable, absent any lawful justification and/or excuse, and it was a direct result of Defendant Palmere's failure to adequately supervise his officers.

431.    As a direct and proximate result of Defendant Palmere's failure to adequately supervise his officers and employees, Plaintiff was injured as detailed herein and has suffered, and continues to suffer damages.

432.    Defendant Palmere's failure to properly supervise Defendant BPD's officers was tantamount to deliberate indifference.

433.    Defendant Palmere's failure to adequately supervise further confirms the aforementioned pattern and practice.

434.    As alleged herein, Defendant Palmere has engaged in a pattern, practice, policy, or custom of allowing Defendant BPD's officers to plant evidence, conduct illegal arrests, searches, and seizures, and improperly use police powers.

435.    Defendant Palmere was aware, and should have foreseen, that the named Officer Defendants would confront situations as that presented by Plaintiff.

436.    Upon information and belief, situations involving illegal conduct similar to that which resulted in the deprivation of Plaintiff's constitutional rights and the injuries detailed herein, have previously been experienced by Defendant Palmere and have been similarly mishandled by Defendant Palmere as alleged herein.

437.    Defendant Palmere's improper handling of allegations of planted evidence, illegal arrest and improper use of police powers committed by the named Officer Defendants such as

those detailed herein will frequently, and did in the instant case, result in the deprivation of individual constitutional rights as alleged herein.

438.    As a direct and proximate result of Defendant Palmere's deliberate indifference to the supervision of Defendant BPD's officers as herein detailed, Plaintiff has been injured, and continues to suffer injury.

WHEREFORE, the Plaintiff demands judgment against the Defendant for compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000.00) and TEN MILLION DOLLARS ($10,000,000.00) punitive damages, with interest and costs with interest and costs, and for reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988(b).

## JURY TRIAL DEMAND

Plaintiff demands trial by jury on all issues of fact in this case.

Respectfully Submitted,

_____/s/ Joshua L. Insley_____
Joshua L. Insley, #30055
Hannah M. Ernstberger, #20516
Saller, Lord, Ernstberger & Insley
12 S. Calvert Street, 2nd Floor
Baltimore, MD 21202
(410) 783-7945